FORD ELLIOTT, Judge:
 

 Before us are cross-appeals from an order of the Court of Common Pleas of Westmoreland County directing equitable distribution of marital property. The parties’ principal dissatisfaction with the trial court’s order centers upon Husband’s pension plan and profit sharing plan. For the reasons set forth herein, we must reverse and remand.
 

 Husband and Wife were married on June 18, 1980, and separated on or about September 15, 1989. A complaint in divorce was filed by Wife on August 14, 1990. The action was bifurcated and a decree in divorce was entered on August 26, 1992. No children were born of this marriage. Husband is self-employed in a family-owned and operated lumber and home building business. Wife is employed as a teacher. A Master’s hearing was conducted on July 15, 1992. In his report filed January 14, 1993, the Master recommended that the assets of the marital estate be divided on an equal basis. Both parties filed exceptions to the report. A hearing was held on July 16,1993, by the trial court for clarification on the issue of Husband’s pension. The trial court adopted the Master’s report and recommendation with the exception of the valuation of the pension and profit sharing plans and entered an order dated July 28, 1993. Subsequently, an amended order was entered on August 17,1993, to correct a typographical error. These timely appeals followed.
 

 On appeal both parties challenge the exercise of the trial court’s discretion in its handling of Husband’s pension and profit sharing plans. Wife challenges the method of valuation utilized by the trial court, and Husband disputes the method of distribution.
 

 Before addressing the issues presented, we note that in reviewing challenges to an order of equitable distribution, the trial court’s decision will stand unless the court abused its discretion in formulating the order.
 
 Endy v. Endy,
 
 412
 
 *133
 
 Pa.Super. 398, 403, 603 A.2d 641, 643 (1992). We have stated that an abuse of discretion is not found lightly, but upon a showing of clear and convincing evidence.
 
 Miller v. Miller,
 
 421 Pa.Super. 23, 27, 617 A.2d 375, 377 (1992). Under the abuse of discretion standard, the appellate court does not usurp the trial court’s duty as factfinder.
 
 Id.
 
 An abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law.
 
 Liciardello v. Liciardello, 391
 
 Pa.Super. 219, 221-22, 570 A.2d 1062, 1063 (1990).
 

 Accepting the parameters of our review, we turn first to the issue presented by Wife. Wife argues that the trial court abused its discretion by applying a coverture fraction to Husband’s pension and profit sharing plans which resulted in an unfair and unequitable valuation of the marital component on the plans. The thrust of Wife’s claim is that because Husband’s plans are defined contribution plans, the use of a coverture fraction is not required for determining the marital portion for equitable distribution.
 

 Pension plans are generally of two basic types: the defined contribution plan and the defined benefit plan. Recently, in
 
 Berrington v. Berrington,
 
 534 Pa. 393, 633 A.2d 589 (1993), our supreme court discussed the two types of pension plans.
 

 A defined benefit plan is one in which the employer promises a certain benefit; a defined contribution plan is one in which the employer promises a certain contribution.
 

 In a defined benefit plan, the benefit which is promised is calculated by a formula defined in the pension plan provisions. The employer pays a specified benefit at retirement. In some defined benefit plans, the employee contributes nothing; in others, the benefits are based, in part, on what the employee contributes. The employer’s contribution to the plan, however, varies from year to year based on the amount which is needed at any particular time to pay the benefits which are due. Individual accounts of each employee’s contribution, if any, are maintained, but these accounts do not specify an employer contribution.
 

 
 *134
 
 In a defined contribution plan, however, individual accounts specify not only the employee’s contribution, but the employer’s as well. The benefits to be paid in the defined contribution plan, however, unlike those in the defined benefit plan, are not fixed, for they depend upon the performance of investments which are made with the contributions.
 

 Id.
 
 at 396 n. 1, 633 A.2d at 590 n. 1. Because of the distinct nature of each of these plans, their method of valuation is different as well. As one commentator has explained:
 

 Valuing the defined contribution plan
 

 Defined contribution plans are similar to savings accounts, in the sense that the value of each individual account is indicated by current account statements. The [marital portion subject to equitable distribution] in the employee’s retirement account is equal to the value of the account at the date of separation. Valuation becomes a matter of reviewing the latest account statement furnished to the employee by the plan administrator. For example, if the parties separate on January 1, and the latest account statement dated January 1 lists the fair market value of the employee’s account as $20,000, that figure is the value of the account for the purpose of disposing of the retirement interest. When separation occurs after the most recent statement, the fair market value of the account can be approximated by determining what additional investments were made on behalf of the account and computing increases, or decreases, in the account. Further information from the plan administrator should be available to make an acceptably accurate determination in this instance.
 

 Valuing the defined benefit plan
 

 It is the defined benefit plan which raises significant valuation problems. Unlike the defined contribution plan, there is no individual account statement which provides the parties with the value of the plan at regular intervals. All we know is that if the employee stays alive and on the job
 
 *135
 
 until retirement, he will be entitled to receive a specified monthly payment for the balance of his life.
 

 Defined benefit plans are valued by actuarially determining their present value. ... The calculation of a present value requires discounting for mortality, based upon group annuity mortality tables, discounting for interest, and discounting for the probability that the employee will remain with the company to retirement age. All of the various factors can be considered by the actuary in determining the present value of the plan.
 

 Hardie,
 
 Pay Now or Later: Alternatives in the Disposition of Retirement Benefits on Divorce,
 
 53 Cal. St. B.J. 106 (1978) (footnotes omitted) (parenthetical added).
 

 Wife argues on appeal that because no present value calculation is necessary for the valuation of a defined contribution plan, then no coverture fraction calculation need be applied to such a benefit. In effect, the value of the marital portion of the plan account is readily ascertainable by simply reviewing the account for the dates and amounts of the contributions.
 

 As to the valuation of the pension benefits involved in the instant case, we agree with Wife that the use of a coverture fraction is unnecessary and unfairly reduces the portion of the pension which should be available for distribution. However, we will not go so far as to direct that the use of the coverture fraction is inapplicable to all defined contribution plans.
 

 We begin our analysis by stating that an exhaustive review of the case law in this Commonwealth reveals that the vast majority of reported decisions deal with the valuation and distribution of defined benefit pension plans, and the coverture fraction calculations are an important part of the analysis in these decisions. The numerator of the coverture fraction represents the number of years the parties were married, and the denominator represents the number of years the employee/spouse participated in the plan.
 
 Katzenberger v. Katzenberger,
 
 409 Pa.Super. 10, 597 A.2d 636 (1991),
 
 affirmed,
 
 534
 
 *136
 
 Pa. 419, 683 A.2d 602 (1993), relied upon by the trial court, is one such example.
 

 While the coverture fraction is an essential component of this formula for determining marital portion of the defined benefit plan, it is not an essential factor in the valuation process itself. The coverture fraction is merely a way to calculate what portion of a pension adjusted to present value
 
 [1]
 
 is attributable to the marriage.
 
 See: Berrington, supra; Cornbleth v. Cornbleth,
 
 397 Pa.Super. 421, 580 A.2d 369 (1990);
 
 Lowry v. Lowry,
 
 375 Pa.Super. 382, 544 A.2d 972 (1988);
 
 DeMasi v. DeMasi,
 
 366 Pa.Super. 19, 530 A.2d 871 (1987).
 

 As set out earlier, because a defined contribution plan is very similar to a savings account with valuation readily determinable, the marital portion of that valuation may also be readily ascertainable without resort to a percentage calculation. If upon reviewing the account records the value of the plan at both the date of marriage and date of separation is apparent, then the marital portion of the pension account is easily established. It is the difference between the two. This valuation would include all contributions made during the marriage as well as any increases in value of all contributions made both marital and non-marital. Moreover, no separate determination of increase in value of the pre-marital portion is required. Following this valuation of the marital portion of the defined contribution plan the only additional calculations left for the court would be to determine the distributive share of the pension and its increase in value from date of separation to date of distribution.
 

 Turning to the case at hand, because the valuation of husband’s defined contribution plans appears readily ascer
 
 *137
 
 tamable, the application of the coverture fraction is unnecessary. Therefore, we must vacate the order of the trial court and remand for recalculation of the marital share of the plans.
 
 [2]
 

 Our decision today focuses on the particular pension and profit sharing plans before this court and precludes the use of a coverture fraction calculation for this plan. However, we will not at this time extend our holding to include all defined contribution plans. The valuation of any pension plan must depend upon the characteristics of the individual plan. To the extent that there are defined contribution plans, which accounts will not show specific account balances for the years of marriage, then it may well be that a coverture fraction may have to be utilized in determining the percentage of the account balance which is attributable to the marriage. We also note that there may be instances where a coverture fraction need not be applied to a defined benefit plan. Specifically, in the instance where the coverture fraction represents one hundred percent. Accordingly, we leave it to the discretion of the trial court whether such a calculation is necessary in any given case. The use of a coverture fraction has nothing to do with the valuation of a pension plan itself. Rather, its sole purpose is to determine what part of the value of the plan is attributable to the years of marriage and hence marital property subject to equitable distribution. However, if this marital portion is clear from the records of the plan itself, the use of the coverture fraction is unnecessary and potentially unfair to either the employee or non-employee spouse.
 

 The issue presented by Husband on appeal challenges the method of distribution utilized by the trial court of Husband’s pension plans. Husband contends that the trial court erred in utilizing the immediate offset method rather than the deferred
 
 *138
 
 distribution method for distribution of funds in the pension and profit sharing plans.
 

 Retirement benefits may be distributed by either an immediate offset method which divides the benefits at the time of the equitable distribution proceeding or the deferred distribution method which allows the court to reserve jurisdiction over the benefits until they mature or enter pay status.
 
 See Braderman v. Braderman,
 
 339 Pa.Super. 185, 488 A.2d 613 (1985), regarding discussion of two methods as they apply to a defined benefit plan.
 

 The reasons why one method may be preferred over another have been set out as follows:
 

 Deferred distribution ... is the preferred method of distribution for unvested retirement benefits, since the risks of nonreceipt of the benefits are shared by the parties. Deferred distribution may also be the method of choice where the parties have insufficient assets to effect an immediate distribution____
 

 Immediate offset is sometimes preferable because it ends the relationship between the parties and can be utilized where the parties have sufficient assets to make an exchange. The immediate offset method involves an immediate distribution of the retirement benefits by way of a set-off for the present value of the benefits. The present value is an estimate of the current worth of the future payments ....
 

 Wilder,
 
 Family Law Practice & Procedure,
 
 (3d ed. 1993) § 23-3 at 266 (footnotes omitted).
 

 Because we are dealing instantly with a defined contribution plan where valuation is not a factor, the only consideration before the court as to method of distribution is whether there are sufficient assets available to make an adequate division of marital property. Husband argues that he has insufficient liquid assets to satisfy Wife’s marital portion of the pension plans. He argues that a deferred distribution of the funds is the better method or, in the alternative, that the trial court
 
 *139
 
 should order an immediate rollover from IRA funds and pension and profit sharing funds to Wife.
 

 The court appears to have recognized Husband’s difficulties with liquidity of assets when it states as follows: “The Court is further aware that said adjustment will be a relatively large amount but the Court will try to accommodate the ability of the defendant to pay said amount.” Trial court opinion, 7/28/93 at 9. Because we are vacating the order of the trial court as to the valuation of the pension and profit sharing plans and remanding for a recalculation of the marital share, we leave to the trial court on remand to determine anew what method of distribution is now appropriate.
 

 Reversed and remanded for proceedings consistent with this opinion.
 

 [1]
 

 . The present value of the pension benefit or employee benefit is estimated to be .the amount of monies the employee would take in return for giving up his right to an unknown number of future payments. This amount is discounted by actuarial calculations reflecting contingencies that could affect future pay outs, with such discounts being given for mortality, inflation, interest, probability of continued employment and probability of vesting.
 

 Skoloff,
 
 How to Evaluate and Distribute Employee Benefits in Divorce,
 
 NAT’L. L.J. 25 (February 13, 1984).
 

 [2]
 

 . We direct the trial court’s attention to the following matter. At the July 16, 1993 hearing, it appears that both counsel agreed to the value of each plan using a valuation date of
 
 January 31, 1991.
 
 Deducted from that value were three months of post-separation contributions made by husband in 1989. Our concern centers on the fact that no mention is made of a deduction of any 1990 post-separation contributions. Since our decision today requires a remand for a complete revaluation, we leave this matter to the court’s consideration and the parties’ explanation on remand.