2021 PA Super 200

| | |
|---|---|
| THERESA CUTH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BRIAN A. CUTH | |
| Appellee | No. 1203 EDA 2020 |

Appeal from the Decree Entered May 1, 2020
In the Court of Common Pleas of Lehigh County
Civil Division at No: 2015-FC-1102

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.*

OPINION BY STABILE, J.:                    **FILED OCTOBER 06, 2021**

Appellant, Theresa Cuth, appeals from the May 1, 2020 decree of divorce.  We affirm.

On August 13, 2015, Appellant filed a complaint for divorce and equitable distribution against Appellee, Brian A. Cuth, after twenty-two years of marriage.  An appointed Master conducted a hearing on September 17, 2017, and filed a report on August 21, 2018.  The trial court entered a preliminary order and decree implementing the report on August 21, 2018.  On December 27, 2018, the trial court entered a qualified domestic relations order ("QDRO") regarding Appellee's pension from the Whitehall Township Police Pension Fund and Trust (the "Trust").  Under the QDRO Appellant would

_____

* Retired Senior Judge assigned to the Superior Court.

receive survivor benefits under the pension if Appellee predeceased her. The Trust rejected the QDRO in part, stating that Appellant, as a former spouse, is ineligible for survivorship benefits under Appellee's pension.[1] In specific:

> Paragraph 9 of the original Pension QDRO provided that Appellant was entitled to a portion of the survivor benefit payable under the Police Pension Plan in the event that Appellee remarries and predeceases Appellant. The Administrator of [the Trust] determined that Paragraph 9 is 'not enforceable under the Plan and applicable law' and thus, that it would not be accepted.

Trial Court Opinion, 7/20/20, at 2. Appellant refused to execute a revised QDRO omitting Paragraph 9 and on April 17, 2019 the trial court remanded the matter to the Master for creation of a new equitable distribution scheme.

The Master conducted a hearing on July 9, 2019. Appellant maintained that she thought Paragraph 9 of the QDRO should be approved under the township's ordinance. N.T. Hearing, 7/9/19, at 16-20. She did not, however, take any legal action against Whitehall Township to enforce Paragraph 9. *Id.* at 39. The parties also addressed the possibility of Appellant obtaining an insurance policy on Appellee's life in lieu of a portion of the survivor benefits of Appellant's pension.[2] Appellant testified that a policy would cost $200 to $900 per month, depending on the duration and value of the policy. *Id.* at

---

[1] *See generally*, Police Pension Fund Act, 53 P.S. 761, *et seq.*

[2] Appellant's inability to obtain survivor benefits under Appellee's pension was the only remaining equitable distribution issue. The parties agreed upon the division of the pension during Appellee's post-retirement lifetime, and they agreed upon the division of their other assets. N.T. Hearing, 7/9/19, at 28-34.

27. She brought no written quotes or supporting documentation to the hearing. *Id.* at 44-46. Appellant said she was unwilling to obtain life insurance on Appellee, in lieu of survivor benefits under his pension, if she was solely responsible for the monthly premium. *Id.* at 27-28. She considered $200 per month an excessive life insurance premium. *Id.* at 48. Her monthly income was $5,500.00 and her household expenses were approximately $2,500.00. *Id.* at 47-48.

The Master issued a report which read in part as follows:

> The remand order directed the undersigned to address what has become an impossibility regarding contemplated division of [Appellee's] pension benefits. As a corollary to the remand on this issue, the undersigned also was tasked with addressing possible 'overpayment' by Appellee of spousal support/alimony *pendente lite* based upon the delay from the time the preliminary order and decree was signed in September, 2018, and the continuing unresolved issues which have delayed entry of a divorce decree and termination of support based upon the recommendations made by the undersigned.

> […]

> It is further recommended that [Appellant] make an election as to securing a life insurance policy on [Appellee's], in whatever form and death benefit payable she chooses, in order to secure a reasonable portion of the pension benefits which would be payable to her and which may be subject to forfeiture in the event of [Appellee's] death. However, as the terms of the [pension plan] (interpreted by the plan administrator) will not honor [Appellant's] designation to receive death benefits, it is concluded that neither party is at fault for this interpretation and/or change in circumstances and that the terms of the plan are simply what they are, requiring the parties to adapt accordingly. As [Appellee] should not have to incur additional costs based upon the terms of the plan, but because [Appellant] takes some risk through the equitable distribution award provided to her, it is recommended that [Appellant] make the election as to life insurance coverage

for [Appellee] and that [Appellee] fully cooperate with obtaining a physical and the taking of any and all steps necessary to permit [Appellant] to secure her chosen life insurance coverage for [Appellee]. The cost of obtaining the coverage in the first instance and the ongoing premiums which will be due to maintain the chosen life insurance coverage should be the responsibility of [Appellant].

Report of the Master in Divorce, 7/29/19, at 1-5 (some capitalization omitted).

Both parties filed exceptions to the Master's recommended order. The trial court conducted a hearing on September 25, 2019. Appellant asked for time to procure expert testimony on the value of the survivor's benefits she could no longer receive under Appellee's pension. N.T. Hearing, 9/25/19, at 8. Based on the expert's valuation, Appellant would ask for an offset of that amount against other marital assets. *Id.* The trial court noted Appellant's failure to develop the record at hearing before the Master:

> [Appellant's Counsel]: So we need a – there is – in Master Roberts' recommended division of assets, there's an award to [Appellant] of 50 percent of the pension. There's also an award to [Appellant] of the survivor benefit. There's no numbers attached to that, none. In the survivor benefit issue, we need a number attached to that, and the only way to do that is to have it valued.
>
> THE COURT: You knew that going back in front of the Master. I remanded it. Why didn't you develop the record then?
>
> [Appellant's Counsel]: Because we didn't know that Master Roberts was going to elect that option. You left it wide open.
>
> THE COURT: Two bites at the apple then.
>
> [Appellant's Counsel]: It's still before you. There is still jurisdiction for Your Honor to do what you intended to do in April of this year. There is still jurisdiction to do that now. And if you go back and look at your order –

THE COURT:  I understand what my order is.  It's disturbing to me that we were here in April on a September order.  And now, it's September again, and the parties are in the same place –

[Appellant's Counsel]:  Well, we're not in the same place.

THE COURT: -- as a year ago.

[Appellant's Counsel]:  Let me further answer your question and suggest to Your Honor that we're really not in the same place. **The easiest way for Master Roberts to effectuate the equitable division that you ordered was simply to offset against another asset.  That would have been done.  It would have been clean, over.**

Instead, he requires that [Appellant] get a life insurance policy, but in no amount.  We don't have an amount for that, we don't have a value.

THE COURT:  Why wasn't that discussed?

[Appellant's Counsel]:  Because we didn't know that was going to be the option elected by Master Roberts.  In fact, we argued against it because it's time consuming among other things.  Expensive.  Subject to argument.

*Id.* at 9-11 (emphasis added).[3]

On December 21, 2019, the trial court entered an order denying the parties' exceptions, except that it extended the date of termination of Appellee's "spousal support/alimony *pendente lite*" ("APL") obligation to March 1, 2020.  The court also set March 16, 2020 as the date after which the divorce decree could be entered.  On March 4, 2020, the trial court approved a revised

---

[3]  The record reflects that both parties have life insurance policies.  N.T. Hearing, 9/25/19, at 9.  The policy presently at issue is an additional policy solely to protect Appellant if Appellee predeceases her and she receives no survivor benefits under the pension.

- 5 -

QDRO with Paragraph 9 omitted. Appellant's counsel requested and received several delays of entry of the divorce decree so that she could procure a life insurance policy. The trial court entered the final divorce decree on May 1, 2020.[4] This timely appeal followed.

Appellant presents two questions:

1. When it divided the marital estate, did the trial court err in its distribution of [Appellee's] pension by its floundering attempt to replace her survivor annuity— which would have secured her right to benefits in the event of his death—made without considering the pension's value, the amount of life insurance required to protect [Appellant] from the risk that he would die first, and any other method of effecting equitable distribution?

2. Did the trial court err when it relieved [Appellee] of the obligation of paying alimony *pendente lite* prior to the completion of the divorce litigation?

Appellant's Brief at 6.

These questions challenge the trial court's equitable distribution scheme, set forth in orders rendered final by the divorce decree. Our review is limited; we will not reverse unless we find an abuse of discretion or error of law. **Nagle v. Nagle**, 799 A.2d 812, 818 (Pa. Super. 2002), **appeal denied**, 820 A.2d 162 (Pa. 2003). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." **McCoy v. McCoy**, 888 A.2d 906, 908 (Pa. Super. 2005). "To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law

---

[4] According to the trial court's July 20, 2020 opinion, the life insurance policy finally took effect on May 11, 2021. Trial Court Opinion, 7/20/20, at 12.

or failed to follow proper legal procedure." ***Hayward v. Hayward***, 868 A.2d 554, 558 (Pa. Super. 2005). "Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Id.***

In support of her first argument, Appellant cites ***DeMarco v. DeMarco***, 787 A.2d 1072 (Pa. Super. 2001), in which this Court considered the proper valuation of the husband's police pension. The trial court considered expert evidence and chose to value the pension as if the husband retired on his fiftieth birthday (he was fifty-two as of the trial). ***Id.*** at 1074-75. The ***DeMarco*** Court concluded that the record did not support an arbitrary selection of age fifty as a retirement date, especially since the husband had already worked past that age. ***Id.*** at 1080. Significantly, for purposes of analyzing the instant case, the pension did not include survivor benefits. The wife nonetheless obtained an insurance policy on the husband's life, and the trial court awarded alimony to wife to cover the premiums. ***Id.*** at 1081. The ***DeMarco*** Court vacated the alimony award, concluding it had no relation to the factors specified in 23 Pa.C.S.A. § 3701, governing alimony awards. ***Id.*** The Court also noted that, if the husband died before age seventy (presumably the age at which the term life insurance policy expired), but after retirement, the wife would receive some of the pension plus the lump sum life insurance payout. This Court concluded that the monthly alimony income from husband, plus the

possibility of wife receiving her marital portion of the pension in addition to a life insurance payout, constituted a "double award." *Id.*

Appellant argues that *DeMarco* supports her case insofar as the Court did not rule that an order directing the husband to pay life insurance premiums was "erroneous *per se*." Appellant's Brief at 37. We agree that nothing in *DeMarco* prohibits the result Appellant seeks. The question remains, however, whether the trial court acted within its broad discretion in declining to order Appellee to assist Appellant with the premiums. To that end, Appellee cites *DeMarco* as support for his argument that benefits not included within a pension plan should not be considered for purposes of equitable distribution.

Appellee also cites *Maloney v. Maloney*, 754 A.2d 36 (Pa. Cmwlth. 2000), *appeal denied*, 775 A.2d 810 (Pa. 2001), in which the Borough of Yeadon (joined as an additional party in the divorce action) challenged a trial court order holding the Borough in contempt and directing it to comply with a QDRO pertaining to the pension of the husband, a retired Borough police officer. The husband died before the order was implemented. *Id.* at 38. Wife received 50% of the husband's pension until his death, and nothing thereafter, as the Borough contended that the wife as an ex-spouse was not entitled to survivor's benefits under the ordinance governing the pension plan. *Id.* The Commonwealth Court reversed the order of contempt, holding that the ordinance did not provide survivor's benefits to an ex-spouse. *Id.* at 39. Appellee relies on *Maloney* as additional support for his argument that

benefits not included in a pension plan are not properly part of an equitable distribution scheme.

We find *DeMarco* and *Maloney* instructive but not conclusive. Here, as in *DeMarco*, it is possible that Appellant will receive her marital portion of Appellee's pension during his post-retirement lifetime plus a life insurance payout if he predeceases her before the end of the term of the policy. The *DeMarco* Court treated this as a double payment, and the *DeMarco* Court's rationale therefore supports the trial court's decision to leave Appellant responsible for the premiums. Similarly, the Commonwealth Court's analysis in *Maloney* supports a conclusion that a benefit not included in a pension plan need not be considered in an equitable distribution scheme.[5] In other words, neither of these cases supports a conclusion that the trial court abused its broad discretion by directing Appellant to obtain and pay for a life insurance policy.

Furthermore, Appellant has failed to make a case for any viable alternative to the life insurance policy. Her arguments for an offset rest not on evidence of record, but on evidence she wishes to produce after a remand from this panel. Appellant claims she has retained an actuary to value the

---

[5] Commonwealth Court decisions do not bind this Court, but we may consider them as persuasive authority. *Petow v. Warehime*, 996 A.2d 1083, 1189 n.1 (Pa. Super. 2010), *appeal denied*, 12 A.3d 371 (Pa. 2010).

survivor benefit she cannot receive, and she argues for an offset[6] against other marital assets based on the expert's valuation. According to the evidence Appellant wishes to produce on remand, Appellee's monthly pension would have been lower had he and Appellant remained married, and had he elected the survivorship benefit for her. Appellant argues the trial court abused its discretion because Appellee can receive a higher monthly pension and bear no responsibility for the insurance premiums.

We conclude that Appellant is not entitled to a remand to seek an offset. Appellant, as demonstrated above, produced no pertinent evidence at the July

_____

[6] The **DeMarco** Court wrote:

> Pennsylvania law provides two methods to distribute a pension when dividing the assets of a marital estate. The first method, immediate offset, awards a percentage of the marital portion of the value of the pension to the party earning it and offsets the marital value of this pension with other marital assets at the time the estate is divided. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. The second method, deferred distribution, generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension.
>
> We have recognized that neither distribution scheme will be appropriate to all cases. Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it in order to determine which method would best effectuate economic justice between the parties.

**DeMarco**, 787 A.2d at 1077 (internal citations and quotation marks omitted)

9, 2019 hearing. This despite the Master's report following an earlier hearing, held September 27, 2017:

> The largest marital asset aside from the real property is [Appellee's] defined benefit pension. **As no specific value was ascertained for same and because the asset is not likely readily subject to an offset**, it is recommended by the undersigned that the marital portion of [Appellee's] defined benefit pension be divided on a 50/50 basis pursuant to a [QDRO]

Report of the Master in Divorce, 8/21/18, at 15 (emphasis added). Thus, this matter already has undergone two hearings at which Appellant could have produced evidence of the value of Appellee's pension. At the second hearing, Appellant was aware that the Trust would not pay survivor benefits to a former spouse. Yet, at the July 9, 2019 remand hearing she produced no evidence of the value of the survivorship benefit and no evidence of the cost of a life insurance policy to replace the value of the survivorship benefit. Appellant testified that she believed the Trust was wrong to reject Paragraph 9, but she had taken no legal action to challenge the Trust's position. Appellant further testified that she believed $200 per month—the lowest premium she could find for a term insurance policy on Appellee's life—was excessive. She nonetheless failed to produce evidence in support of any alternative.

Given the limited evidence before him, the Master concluded that the life insurance policy was the best means of replacing the survivor benefit she would have received had the parties remained married. And, given that Appellant's monthly income was approximately $3,000.00 more than her household expenses, the Master deemed a $200 per month policy affordable.

The trial court agreed, and in its December 31, 2019 order directed Appellant to obtain an insurance policy with Appellee's cooperation.

Given this Court's rationale in **DeMarco**, and given the sparse evidence of record, for which Appellant is at fault, we discern no basis upon which we can conclude that the trial court committed an error of law or an abuse of discretion. Appellant's first argument lacks merit.

Next, Appellant claims the trial court erred in terminating APL[7] prior to the completion of this appeal. Appellant relies on **DeMasi v. DeMasi**, 597 A.2d 101, 104 (Pa. Super. 1991), **appeal denied**, 629 A.2d 1380 (Pa. 1993), in which this Court held that, when an appeal is pending on matters of equitable distribution, APL continues throughout the appeal. Appellant's reading of **DeMasi** is correct, but her reading of the record is not. The order in question, which the parties and the court referred to throughout this matter as "APL," or "support," or "APL/support," is a support order. It was entered by the Northampton County Domestic Relations Division, in accord with Pa.R.C.P. No. 1920.31(a)(2).[8] It was made a part of the record in this divorce

---

[7] Section 3702 of the Domestic Relations Code governs APL. 23 Pa.C.S.A. § 3702.

[8] Rule 1910.2, governing venue of support actions, authorizes the transfer of a support action to the county of a pending divorce action. Pa.R.C.P. No. 1910.2(c). Given its order terminating support, the trial court clearly assumed jurisdiction over the support proceeding. We observe, however, that the certified docket does not reflect the receipt of a transferred action or consolidation of this action and the support action.

proceeding during the September 27, 2017 hearing before the Master. N.T. Hearing, 9/27/17, at 11, Exhibit D-5. Acknowledging this, Appellant cites Pa.R.C.P. No. 1920.31(d) that an existing support order becomes an APL order upon entry of a final decree in divorce. Pa.R.C.P. No. 1920.31(d) ("Upon entry of a decree in divorce, an existing order for spousal support shall be deemed to be an order for alimony *pendente lite* if any economic claims remain pending.")

For several reasons, we are unable to grant relief. First, Appellant cannot salvage her argument under 1920.31(d) because the support order was terminated prior to entry of the divorce decree. Thus, there was no existing support order to be converted into APL under Rule 1920.31(d). Second, there is no indication in the record that Appellant ever sought APL. Appellant filed a complaint pursuant to Rule 1910.4 in Northampton County, but by her own acknowledgement did not seek APL in that complaint. She also acknowledges that she never sought APL in this divorce action.[9] This

_____

[9] Appellant protests that she could not have claimed APL in this divorce proceeding because the procedural rules prohibit it: "A divorce complaint shall not include claims for child support, spousal support, and alimony *pendente lite*. Instead, claims for child support, spousal support, and alimony *pendente lite* shall be raised in the domestic relations section by filing a complaint pursuant to Pa.R.C.P. No. 1910.4." Pa.R.C.P. No. 1920.31 (a)(2). We observe that Appellant filed this divorce action in 2015, and the rules were amended in 2018 to prohibit an APL claim in a divorce action. "As amended, Pa.R.C.P. No. 1930.21 precludes parties from raising claims for […] alimony *pendente lite* as counts in a divorce action." Pa.R.C.P. No. 1930.21, Explanatory Comment – 2018. Regardless, nothing in the record indicates that Appellant filed for APL in the trial court.

results in waiver:  "The failure to claim […] alimony *pendente lite* […] prior to the entry of a final decree of divorce or annulment shall be deemed a waiver of those claims."  Pa.R.C.P. No. 1920.30(c).

Decree affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2021