J-A34021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD ALLAN SWARTZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ELAINE M. SWARTZ, | : | |
| | : | |
| Appellant | : | No. 865 MDA 2014 |

Appeal from the Order Entered May 6, 2014,
In the Court of Common Pleas of Franklin County,
Civil Division, at No. 2011-1851.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 23, 2015**

Elaine M. Swartz ("Wife"), age fifty-four, appeals from the May 6, 2014 order of the Franklin County Court of Common Pleas in this divorce action. We affirm.

After a nearly twenty-nine-year marriage, Richard Allen Swartz ("Husband"), age fifty-five, filed a complaint in divorce on April 29, 2011, that included a count for equitable distribution. N.T., 2/25/13, at 8, 40. On June 30, 2011, the court entered an order, upon stipulation of the parties: 1) prohibiting Husband's contact with Wife and providing that upon violation of the order, "Wife may bring a Protection from Abuse action against him," and 2) proscribing Husband's ability to "raise, as a defense or objection, the passage of time between the occurrence of the 'abuse' and the date of filing

same." Order, 6/30/11 at 1. Thereafter, Wife filed a counterclaim adding counts for alimony *pendente lite*, counsel fees and expenses, and alimony. The parties have two children: an emancipated son and a minor daughter in tenth grade. *Id*. at 9. The daughter lives with Wife; Husband has limited partial custody. *Id*. at 38. Apparently, a child support action also ensued.[1]

Husband worked as a police officer for the Borough of Chambersburg for the length of the marriage and attained the rank of sergeant for eight to ten years prior to separation. N.T., 2/25/13, at 10, 40. He earned approximately $100,000 annually, which included base pay of $60,000 and overtime pay of $40,000. *Id*. at 48. He retired from the police force in February 2011 and unsuccessfully ran for magisterial district judge. *Id*. at 41. Husband currently works as a driver for a waste management company earning $41,000 per year. *Id*. at 10, 39. He has a pension from the Borough of Chambersburg that pays a gross amount of $4,641.44, or $3,950.15 net, per month. *Id*. at 35; Master's Report, 8/15/13, at 3 ¶15. If Husband is married at the time of his death, the pension plan offers survivor benefits, at no cost, to his spouse in the amount of fifty percent of

---

[1] Following a support conference on February 4, 2013, the trial court entered a support order that day. Wife's gross income was set at $23,885 based on her part-time employment with Blaine Windows plus her unemployment compensation. Husband's gross annual income, excluding his pension, was set at $35,780, excluding one-half of his overtime pay of $210 per week, per Franklin County Domestic Relations policy. N.T., 2/25/13, at 39. Neither party appealed the support order.

the benefit Husband was receiving. If Husband is not married at the time of his death, there is no survivor benefit. N.T., 2/25/13, at 35. The present value of the pension was determined to be in excess of $1.2 million dollars. *Id*.

Wife also worked throughout the marriage. N.T., 2/25/13, at 99–100. From 1985 until April 2011, Wife worked for a window hardware company, Blaine Windows, that provided flexible hours and permitted Wife to work from home while she raised the couple's children. *Id*. at 12, 100–101. Due to the economic downturn, the company reduced Wife to part-time status, and she lost her eligibility for benefits. *Id*. at 100. Thereafter, Wife worked on a commission basis for a car dealership, earning $28,000 in 2012. *Id*. at 105, 116. Her position was eliminated, and she collected unemployment benefits of $34.00 per week. *Id*. at 107. Wife also serves on the Chambersburg Borough Council, earning $4,150 per year. *Id*. at 13, 105. Wife has been unable to find new full time employment despite submitting over eighty-seven resumes. *Id*. at 111. Wife testified that she developed memory issues resulting from two blows to the head by Husband, one in March 2011 and one in April 2011. *Id*. at 118.

A Special Master was appointed on August 17, 2012. Because Husband's pension plan would not provide survivor benefits for Wife in the event of a divorce, Wife requested a continuance of the Master's hearing to

allow time for further investigation into this issue by both parties, including procurement of an appraisal of the pension and estimates for the cost of life insurance to secure Wife's interest in the pension.

A hearing before the Master was held on February 25, 2013. The Master submitted her Report and Recommendations on August 15, 2013. Regarding Husband's pension, which amounted to $3,950.15 net per month, the Master recommended that each party receive fifty percent, or $1,975.08 per month. Wife filed exceptions on September 4, 2013, and Husband filed exceptions on September 14, 2013. Prior to oral argument before the Honorable Robert G. Bigham[2] on February 28, 2014, the parties resolved Husband's exceptions by agreement. Trial Court Opinion, 7/11/14, at 7.

The trial court entered an order on March 20, 2014, disposing of Wife's exceptions and determining equitable distribution of the marital estate. Regarding Husband's pension, the trial court modified the Master's recommendation of a fifty-fifty split to a fifty-five/forty-five percent split in favor of Wife. Thus, Husband was to receive $1,777.57 per month and Wife was to receive $2,172.58 per month. Wife filed a motion for reconsideration on March 26, 2014, which was denied on March 28, 2014. The court entered

---

[2] Adams County Judge Bigham was specially appointed by the Pennsylvania Supreme Court because all judges of Franklin County recused due to a conflict of interest. Order, 12/4/13.

a divorce decree on May 6, 2014, and Wife filed her notice of appeal on May 20, 2014. Both the trial court and Wife complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal:

A. Whether the Trial Court abused its discretion and misapplied the law when it failed to make provision either in equitable distribution or through alimony for the cost of life insurance to secure Wife's interest in the survivor benefit of Husband's pension, where the pension is the most significant asset of the parties.

B. Whether the Trial Court abused its discretion and misapplied the law in relying upon the Finding of the Franklin County Domestic Relations Office to set Husband's earning capacity at $35,780.

C. Whether the Trial Court's equitable distribution scheme as a whole fails to effectuate economic justice because the court abused its discretion and misapplied the law on the following equitable distribution factors:[1]

    1. The Trial Court misapplied the law to conclude that factor 9, regarding the parties' respective standards of living, favored Husband; and

    2. The Trial Court misapplied the law to conclude that factor 11, regarding custody of a minor child of the parties, is neutral.

D. Whether the Trial Court abused its discretion and misapplied the law in denying Wife alimony particularly where there is a significant disparity in income and Wife will have a substantial and ongoing liability in connection with the purchase of life insurance in order to secure her interest in Husband's pension.

    [1] [Wife] originally identified five subparts to issue three regarding application of the equitable distribution factors. After review of the Trial Court's Rule 1925(a) Opinion with its clarification of the Court's ruling, [Wife] has elected not to pursue

> arguments that the Trial Court erred in its application of the factors set forth at 23 Pa.C.S.A. §§ 3502(a)(3), (4), (6), and (7).

Wife's Brief at 13.

A trial court has broad discretion when fashioning an award of equitable distribution. *Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review is whether the trial court abused its discretion. *Smith v. Smith*, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Yuhas v. Yuhas*, 79 A.3d 700, 704 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 464 (Pa. 2014). In determining the propriety of an equitable distribution award, we must consider the distribution scheme as a whole. *Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011). "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa. Super. 2003). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to

observe and assess the behavior and demeanor of the parties." ***Childress***, 12 A.3d at 455–456 (citing ***Moran v. Moran***, 839 A.2d 1091, 1095 (Pa. Super. 2003)).

The main focus throughout this case has been Husband's pension because if Husband predeceases Wife, there will be no survivor benefit for Wife. Thus, any pension payment awarded to her by equitable distribution will stop. In her first issue, Wife avers the trial court erred in failing to make provision for the cost of life insurance to secure Wife's interest in the survivor benefit of Husband's pension, either in the equitable distribution award or through alimony, which was not awarded. Wife asserts that the marital estate was valued at $1,516,681.52, and Husband's pension accounted for $1,260,257. She underscores that the pension is a marital asset accrued over nearly twenty-nine years of marriage. Unlike the typical scenario where the spouse who accrued the pension has some control over the survivor benefit, usually by election at the time of retirement, here, upon entry of a divorce decree, Wife's right to receive survivor benefits automatically terminates.

The trial court noted the following stipulation by the parties regarding the pension benefit:

> 1. If the parties remained married, and Husband died, Wife would receive half of the monthly pension amount for her lifetime as the survivor benefit, and Husband's estate would

receive nothing further. Once Wife died, her estate would receive nothing further from the pension.

2. If the parties are divorced and Husband dies, neither Husband's estate nor Wife would receive anything further from the pension.

3. If the parties divorced and Husband remarried, there would be survivor benefits available for Husband's new spouse and/or possibly Wife if Husband predeceased either.

4. The parties had not further investigated the cost of premiums for varying levels of life insurance to protect the parties' interests in Husband's pension.

5. Wife was amenable to remaining married to protect her interest in Husband's pension. Husband did not want to remain married.

Trial Court Opinion, 7/11/14, at 12. The trial court went on to explain Wife's request regarding distribution of the pension, as follows:

Wife desires for Husband to completely pay for life insurance on Husband's life, with Wife as the beneficiary, to insure Wife's interest in the pension. As long as Husband is alive, both parties will continue to receive their respective portions of the pension. If Husband dies unmarried, Wife will receive nothing further. If Husband remarries, and then dies, his new wife may have survivor benefits, and Wife may also be eligible for benefits. This Court's Order dated March 20, 2014 anticipates this possibility and adopts the language used by the Divorce Master, directing in paragraph #19(a) the payment of survivor benefits to Wife under this scenario.

*Id*. at 12–13. The provision of the Master's Report to which the trial court referred, stated as follows:

a. The attorneys are directed to prepare an appropriate Domestic Relations Order, in cooperation with the plan administrator, directing the plan administrator to pay 55% of the

monthly payment of [Husband's] pension, together with the cost of living increases as awarded from time to time, directly to [Wife]. This payment shall be taxable to [Wife]. If [Wife] predeceases [Husband], the entire benefit shall revert to [Husband]. If [Husband] has remarried, is survived by a spouse at the time of his death, and is survived by [Wife], the Domestic Relations Order shall further direct that the plan administrator pay one half of the surviving spouse benefit to [Wife] until the earlier of the death of [Husband's] surviving spouse or the death of [Wife].

Order, 3/20/14, at 5. The trial court continued its explanation of its distribution of Husband's pension as follows:

If Husband chooses to never remarry, and then dies, he and Wife will be in approximately the same situation—Wife will no longer receive her portion of Husband's pension, but Husband, by way of his estate and heirs, (with the exception of limited survivor benefits available for a minor child), will also be cut off from acquiring any more of this asset. In that sense, both Husband and Wife could have the same motivations to obtain insurance on Husband's life to protect the future pension benefits if Husband dies.

Trial Court Opinion, 7/11/14, at 13.

In **DeMarco v. DeMarco**, 787 A.2d 1072 (Pa. Super. 2001), we described the two methods recognized in Pennsylvania to distribute a pension when dividing the assets of a marital estate as follows:

The first method, "immediate offset," awards a percentage of the marital portion of the value of the pension to the party earning it and offsets the marital value of this pension with other marital assets at the time the estate is divided. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. The second method, "deferred distribution," generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is

divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension.

> We have recognized that neither distribution scheme will be appropriate to all cases. Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it in order to determine which method would best effectuate economic justice between the parties.

*Lyons v. Lyons*, 401 Pa. Super. 271, 585 A.2d 42, 47 (1991).

*DeMarco*, 787 A.2d at 1077. Wife argues that the instant case is in "stark contrast" to *DeMarco*, where this Court determined that the trial court's award of alimony to the wife to fund a life insurance policy on husband was improper. She points out that in the present case, the parties were married nearly twenty-nine years, and the pension was already in pay status at the time of separation. Wife's Brief at 29. Instantly, the trial court awarded Wife fifty-five percent of Husband's pension. The trial court opined that with the additional amount Wife would receive over the Master's proposed fifty-fifty split, she could purchase life insurance on Husband's life, with Wife as the beneficiary, to insure her interest in the pension. Wife asserts that "[i]f the equitable distribution factors weigh in Wife's favor, then it is error to expect her to use the additional share of the pension to secure the primary asset she is receiving in equitable distribution." Wife's Brief at 30.

Wife also suggests that the trial court's position that Husband will not receive any benefit from life insurance purchased by Wife to secure the pension is negated by the fact that Husband will receive "the benefit of his pension for his entire life, whether there is life insurance in place or not. If he predeceases Wife, she will receive nothing from the pension, but will receive a life insurance award approximately equal to the pension benefits she would have received during Husband's lifetime." Wife's Brief at 30. Wife maintains that the trial court failed to consider that if Wife predeceases Husband, he "will continue to receive the benefit of the pension for the rest of his life," unlike Wife, who "will receive nothing from the pension" if Husband predeceases her. *Id*. at 28, 30.

Husband counters that the trial court indeed considered Wife's concern and affirmed that fact when it changed the percentage of pension Wife would receive from the Master's proposal of a fifty-fifty split to fifty-five percent for Wife. Husband maintains that the equitable distribution order provides that Wife will receive $200 more per month of Husband's pension than the amount awarded in the Master's proposed distribution. Husband's Brief at 7.

Contrary to Wife's contention, the trial court did indeed consider the potentiality that Wife's pension payment would end if Husband predeceased Wife. For that reason, the trial court adjusted the percentage of the pension upward from the Master's recommended fifty-fifty split to a fifty-five/forty-

five split in favor of Wife. The trial court had determined that its consideration of the equitable distribution factors, 23 Pa.C.S. § 3502, "was very close to 50%/50%." Trial Court Opinion, 7/11/14, at 13. Thus, the additional five percent of the pension awarded to Wife was for the specific purpose of providing Wife with additional funds to purchase life insurance on Husband's life if she so desired. We rely on the trial court's explanation, as follows:

> This Court is well aware of Wife's continued requests for moneys to purchase insurance on Husband's life, and purposely structured it's [sic] recalculation of equitable distribution to provide Wife with additional funds so that she could obtain such insurance as she desired. The amount of the difference in what Wife receives under the Master's plan and under this Court's determination of equitable distribution is approximately $200.00 per month, or $2,400 per year. Under this Court's determination, Wife actually receives about $400.00 more of the pension per month than Husband, or about $4,800 more per year than Husband. Wife had obtained estimates of insurance costs to insure Husband's life for twenty years in the amount of $730,000, representing the approximate sum of 50% of the estimated value of the pension of $1,260,257, or $630,128.50, plus the survivor annuity benefit of $112,937. The Prudential Financial estimate was $9,341.40 per year, or about $778.45 per month. Subtracting the $200.00 per month in increased equitable distribution from the $778.45 insurance payment leaves Wife with $578.45 needed per month to purchase insurance in the amount of $730,000 for a twenty year period. If the additional $200.00 per month difference between what Wife and Husband receive in the pension is also subtracted, Wife's remaining amount needed to cover the insurance payment is only $378.45 per month, which is less than half of the original $778.45 per month estimate. It is ultimately Wife's decision regarding how much insurance she wishes to purchase on Husband's life and for what time periods, but this Court believes it would be inequitable to require Husband to provide Wife with

-12-

any additional money in alimony or equitable distribution to cover the complete insurance payments for Wife's interest in Husband's pension, an interest of which there is no reciprocal interest for Husband if Husband dies unless Husband likewise were to purchase such insurance.

*Id*. at 13–14.

It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. **Anzalone v. Anzalone**, 835 A.2d 773, 780 (Pa. Super. 2003). When reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice. **Id**. Here, the trial court did not misapply the laws or fail to follow proper legal procedures. **Lee v. Lee**, 978 A.2d 380, 382 (Pa. Super. 2009). The trial court did not abuse its discretion.[3] **Id**.

Wife's second issue assails the trial court's utilization of the Franklin County Domestic Relations Office's determination that Husband's earning capacity was $35,780. Wife's Brief at 34. It is noteworthy that Wife asserted at the hearing on exceptions that it was proper for the court to utilize that office's determination of **her** earning capacity but improper to do so for Husband. At the hearing, Wife maintained that the domestic relations

_____

[3] Contrary to Wife's suggestion in her reply brief, there is not "an undertone suggesting that the pension belongs primarily to Husband or that Husband is somehow more deserving of it than Wife." Wife's Reply Brief at 1. If this were true, the trial court would not have modified the Master's recommended division of the pension from fifty/fifty to a fifty-five/forty-five split in favor of Wife.

office properly found her earning capacity to be $28,000 per year. N.T., 2/28/14, at 18. At the same time, she averred that Husband could "earn more than he is currently earning." *Id*. Concomitantly, Husband indicated he did not object to utilizing Wife's earning capacity as that determined by the domestic relations office, $28,000, as long as the trial court also considered Husband's earnings as the amount determined by that office. Thus, the trial court stated:

> d. At Oral Argument, the parties generally agreed to the use of their earning capacities as determined by Domestic Relations. Wife's counsel indicated, on the record, that Wife should be held to the amount as determined by Domestic Relations. Husband's counsel indicated, on the record, the Husband would accept Wife's earning capacity as determined by Domestic Relations so long as Husband's earning capacity as determined by Domestic Relations was also used. The Court determined that it would be appropriate to use the Domestic Relations income information for both parties because both parties were agreeable to using those values for their individual incomes.

Order, 3/31/14, at 1–2. Clearly, while each party agreed to the use of the domestic relations office's determination of earning capacity for him or herself, Wife continued to assert that Husband's earning capacity was undervalued.

Husband contends that if the trial court had not held each party to the domestic relations' designation, each party's earning capacity would have been higher, and the effect would have been the same. Husband's Brief at 11. Husband posits:

Both Husband and Wife are in their 50's and made more [money] prior to separation than either party is currently making. Wife made $33,280.00 a year plus $4,150.00 a year from being a council person for the Borough of Chambersburg. (N.T., p.100; R. 103a). This income was reduced when she became part-time at Blaine [Window] after separation. Husband retired shortly before separation and was making a base salary of $60,000.00 when he retired. (N.T., p. 48; R. 90a). It could be reasonably argued that due to retirement and to market forces neither party is making as much currently as they made prior to separation. Both parties have college educations but both parties are also in their 50's.

Husband and Wife each seem to acknowledge that age is playing a role in their inability to make the [money] that they made prior to separation. Husband testified that age is going to be against him in trying to get certain positions. (N.T., p. 43; R. 89a). Wife says her age is a significant disadvantage in starting over. (N.T., p. 117; R. 108a). While Wife argues that her age may be detrimental in her obtaining employment, she apparently does not acknowledge that this might actually be an issue for Husband as well as Wife.

Husband's Brief at 11–12.

Wife's reliance on **Baehr v. Baehr**, 889 A.2d 1240 (Pa. Super. 2005), as support for her argument that Husband has not searched for employment commensurate with his experience, is misplaced. The underlying issue in **Baehr** involved child support, not equitable distribution. Moreover, the husband therein was under forty years old and had been laid off from work; he was not retired. Before being laid off, he had a lucrative position earning approximately $61,500 per year plus bonuses of $30,000. He accepted a position as an independent contractor for a software company owned by his brother earning $16.50 per hour for a forty-hour work week, which

amounted to approximately $33,000 to $34,000 per year. The court found the father had not made a reasonable effort to find work commensurate with his abilities and thus imputed to him an annual earning capacity of $60,000.

In the present case, Husband was employed in law enforcement for more than twenty-eight years and retired two years past his eligible retirement age. Despite the fact that Husband is retired and collecting a full pension, he also is employed full time. Thus, Husband brings to the table not only a significant retirement income, but he also has full-time earnings post-retirement. While Wife denies that she is not requesting Husband to be held to the income of a full-time police sergeant, in fact, she is doing just that by requesting that he be held to an earning capacity of $60,000.00 per year, which is the salary of a full time police sergeant in that area. N.T., 2/25/13, at 48.

We cannot agree that the trial court abused its discretion on this issue. The trial court stated:

> [E]ven if [the court] adjusted the earning capacities as per Wife's wishes, holding Husband to a much higher earning capacity while holding Wife to the same earning capacity, the resulting difference in earning capacities would not change this Court's determination that the income-related equitable distribution factors either favor or slightly favor Wife, and would not change this Court's determination of equitable distribution which effectuates economic justice between the parties. This Court adopts this position in the instant Opinion.
>
> The Master had determined that the parties' earning capacities were approximately equal, with Wife having an

earning capacity of $45,000 to $50,000 per year and Husband having an earning capacity of $50,000 per year. The record reflects that Wife makes $4,150 per year as a borough councilperson, and earns $19.00 per hour for 20 hours of work per week at her position with Blaine Window. If Wife worked a full-time job at $19.00 per hour, she would earn approximately $39,520 per year, plus her borough councilperson salary of $4,150, which equals $43,670. Notably, this Court did not hold Wife to an earning capacity of $43,670. Wife had previously worked full-time at Blaine Window, earning approximately $16.15 per hour, which is $33,592 per year. Including her borough councilperson salary of $4,150, Wife could earn approximately $37,742 per year. Notably, this Court did not hold Wife to an earning capacity of $37,742 either. Husband makes $14.00 per hour, and works forty (40) hours per week plus approximately ten (10) hours per week of overtime. Husband's yearly salary is approximately $40,040. Notably this Court did not hold Husband to a yearly salary of $40,040.

This Court's adoption of the salaries as determined by the Franklin County Domestic Relations Section actually favors Wife. Husband agreed that he would accept Wife's earning capacity as determined by Domestic Relations if Husband's earning capacity as determined by Domestic Relations was also used. These earning capacities, $35,780 per year for Husband and $23,885 per year for Wife, were both less than what this Court would have otherwise determined. If this Court did not use the Domestic Relation earning capacities, this Court would have determined that both Husband and Wife had a relatively equal earning capacity of approximately $40,000 per year, thus, this Court would have found that equitable distribution factor (3) was neutral.

Additionally, this Court notes that Wife strongly believes that Husband should be more gainfully employed. Husband was once a high ranking police officer, bringing in a salary of about $60,000 per year plus overtime of $40,000 per year. Husband now works a post-retirement full-time job and also works overtime, and does not earn the same amount of money per year as in his previous position as a police officer. Husband testified that he is happy at his current position. Both Husband and Wife testified about their respective job searches. Husband

testified that he had looked for other employment, including some out-of-country jobs with BAE Systems, but that Husband did not want to leave his daughter to travel out-of-country for work. Husband testified that he applied with the Commonwealth of Pennsylvania. Husband testified that he interviewed with a car dealership, but did not get the position. Husband testified that he was offered a job in security for $9.00 per hour, which Husband obviously has not taken. Husband also testified that he would like to find a higher paying job, but he understood that his age might be a factor in finding such employment.

Husband has retired from police work, and as Husband indicated on the record, he does not have interest in ever returning to law enforcement. While perhaps it is possible that Husband could earn more money if he returned to law enforcement, it is clear that Husband does not want to return to such work and this Court does not fault Husband for his choice after his many years of service. This Court will not hold Husband to an unrealistic earning capacity based on a career field he is no longer employed in and will not be employed in, in the future.

Trial Court Opinion, 7/11/14, at 16–18. The trial court considered Husband's age, education, training, health, work experience, and earnings history. *Isralsky v. Isralsky*, 824 A.2d 1178, 1188 (Pa. Super. 2003). We do not find an abuse of discretion.

Wife's third issue assails the equitable distribution scheme as a whole. In particular, Wife asserts that it fails to effectuate economic justice because the trial court misapplied the law regarding factor nine, the parties' respective standards of living, and factor eleven, custody of a minor child. While Wife suggests the trial court "misapplied the law" regarding these factors, Wife's Brief at 35, she fails to cite to any law in support. Rather, her argument posits that the trial court's conclusion "simply defies logic." *Id*. at

36. Regarding factor eleven in particular, Wife avers that the trial court abused its discretion in concluding the factor was neutral for purposes of equitable distribution. *Id*. at 38.

Pursuant to 23 Pa.C.S. § 3502(a), when fashioning an equitable distribution award, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation, or appreciation of marital property; value of each party's separate property; standard of living established during the marriage; economic circumstances of each party; the tax ramifications associated with each asset; the expense of sale, transfer, or liquidation associated with a particular asset; and whether the party will be serving as custodian of any dependent children. 23 Pa.C.S. § 3502(a)(1–11). The weight to be given to these statutory factors depends on the facts of each case and is within the trial court's discretion. *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004) (citing *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997) (*en banc*)).

We rely upon the trial court's explanation for its analysis and evaluation of each of these factors as follows, concluding that the court did not abuse its discretion.

> This Court determined that factor (9) favored Husband. The record reflects that the parties lived a middle-class standard of living, with Wife enjoying the standard of living established by the parties in a greater capacity than Husband. The record reflects that both parties worked during the marriage, with Husband working more hours, including over-time hours, than Wife on a regular basis and bringing in more of the family's income during this time.

> * * *

> Wife mishandled the family's joint funds. Husband was not immediately aware of the financial state of the marriage, having trusted Wife to pay bills and manage the finances. Husband eventually started holding back some of his income in cash to make sure future bills could be paid. Wife never paid off a $12,000 porch bill from the year 2000. Wife borrowed against her life insurance policy, which Husband wasn't aware of. Wife used a tax refund to pay for a vacation, and Husband did not have that luxury.

> Wife admitted at the Master's Hearing that she did not manage the parties' finances correctly. Wife admitted that she was not a great money manager. Wife indicated that she was fine with Husband working overtime and that it was helpful for the parties' finances for Husband to do so. Wife described some of her post-separation expenses, and some of the increased credit card debts, but could not recall what she made some of the expenditures for.

> This Court notes that since separation, Wife has continued to live a higher standard of living than Husband. Wife currently has the benefit of living in the marital residence, while Husband's new residence does not even have an additional bedroom where the parties' daughter can stay. For a time after the parties' separation, Husband was retired, receiving his pension, and not

working, yet paying $2000 per month to Wife plus health insurance for approximately six months, which was more than half of Husband's only income at the time.

This Court believes that based on the parties' incomes during the marriage, if Wife had properly managed the family's finances, the parties would be in a better place today. The record reflects that the standard of living factor favors Husband, because Wife had enjoyed a higher standard of living during the marriage, while Husband spent a majority of his time during the marriage working to bring in the income that Wife mismanaged. While it is unclear to this Court exactly where all of the money that the parties earned over their marriage disappeared to, it is clear that Wife enjoyed the benefit of being in control of the parties' finances. Husband isn't blameless, because his blind trust in Wife's ability to manage the parties' finances prevented his discovery of the parties' financial troubles until nearly the end of the marriage. While the record reflects that both parties enjoyed the fruits of their income, it is clear to this Court that Wife enjoyed a higher standard of living than Husband, and this Court did not err in finding that the standard of living factor in fact favored Husband.

* * *

This Court determined this factor [23 Pa.C.S. § 3502(a)(11)] to be neutral. The parties have two children, an adult son and a minor daughter of age thirteen at the time of the Master's Hearing. The record reflects and this Court believes that both parties are devoted parents who love their children and who both have provided parental duties to their children over the years.

Husband testified that Wife has primary custody of the parties' daughter, but that Husband sees her on a regular basis on Tuesdays, Thursdays, and Saturdays. Husband testified that one reason he did not wish to pursue employment overseas was because he did not want to leave his daughter. Husband testified that he does not currently have a room in his residence for his daughter to stay, and that he would be required to complete some counseling before his custodial time could increase. Husband testified that he has in the past transported

-21-

and still transports the parties' daughter "here and there" as her needs dictate.

This Court recognizes that Wife is currently the primary custodian of the parties' daughter, and as a result, Husband is responsible for paying child support. Both parties enjoy custody of their daughter, however, and it is likely that Husband's custody will increase in the near future if it hasn't already. This Court found that this factor favors neither party in particular, and did not err in doing so.

Trial Court Opinion, 7/11/14, at 20–22, 25.

Given the facts of this particular case, the trial court placed emphasis on Husband's contributions to building the marital estate, by agreement of the parties. Moreover, as noted previously, the weight assigned to each of the equitable distribution factors is at the discretion of the trial court. *Mercatell*, 854 A.2d at 612. Examining the equitable distribution award as a whole, which we must, we do not find that the trial court abused its discretion in analyzing the above factors as it did.

Wife's final issue asserts that the trial court abused its discretion in denying Wife alimony. Other than citing to case law standards, Wife fails to cite to case law in support. While we could find the issue waived, *Jordan v. Jackson*, 876 A.2d 443, 454 (Pa. Super. 2005), we note, instead, that unsupported claims provide scant persuasion as we undertake our review of the record.

The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through

appropriate employment, are met. In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A. § 3701. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

*Dalrymple*, 920 A.2d at 1278–1279 (citing *Isralsky*, 824 A.2d at 1188).

Wife proffers that "it is manifestly unfair not to provide a means for Wife to purchase security for herself to protect against the potentially 'devastating' financial impact of Husband's untimely death." Wife's Brief at 39. We previously addressed this parallel claim in relation to the trial court's provision of an additional five percent of the pension to Wife to ensure this very concern. Moreover, we rely upon the trial court's explanation for its denial of alimony, as follows:

Regarding factor (1), the relative earnings and earning capacities of the parties, this Court has determined in its analysis of the equitable distribution factors that the earning capacities of the parties are approximately equal, but that Husband has a slightly greater earning capacity. This factor slightly favors Wife.

Regarding factor (2), the ages and the physical, mental and emotional conditions of the parties, both parties are of approximately the same age, and while there was some testimony regarding the health of the parties, there was no indication that any health condition of either party prevents a party from pursuing gainful employment. This factor favors neither party.

Regarding factor (3), the sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits, both parties are working in some

capacity and are both able to work full-time. Husband works full-time with some overtime hours in his position as a truck driver for IESI and Wife works part-time with Blaine Window and as a borough councilperson. Husband receives benefits with his full-time position, and Wife does not currently receive benefits with her part-time positions but should be able to receive benefits when she finds full-time employment. Husband's income is currently higher than Wife's, but both parties have an approximately equal earning capacity, with this Court having determined that Husband's earning capacity is slightly higher than Wife's earning capacity. This factor favors Wife slightly.

Regarding factor (4), the expectancies and inheritances of the parties, Husband received an inheritance of personal property and money from his family during the marriage. Husband testified that he received approximately $20,000 as inheritance from his mother's estate, which he put into a joint account and later split the remainder of $14,000 evenly with Wife after separation. At this point, neither party is expected to receive any further inheritances. This facto favors neither party.

Regarding factor (5), the duration of the marriage, the parties were married for approximately twenty-nine years. The parties have left the marriage on approximately equal footing, with similar earning capacities. During the marriage, Husband made a much higher income than Wife. After retirement, Husband's income has significantly lessened, but Husband still earns more than Wife. Both parties are of approximately the same age. Due to mismanagement of the family's finances by Wife, the parties have come out of the marriage with little in the way of financial assets aside from Husband's pension. In balance, this factor favors neither party over the other.

Regarding factor (6), the contribution by one party to the education, training or increased earning power of the other party, this Court has previously determined in analyzing this factor inequitable distribution that this factor is neutral.

Regarding factor (7), the extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child, the record does not reflect that Wife's role as primary custodian

of the parties' minor daughter negatively affects Wife's current ability to pursue more gainful employment. Wife was often employed full-time during the marriage, and this Court believes Wife will be again if she is not already. This Court notes that Husband pays child support to Wife, and there are no special financial circumstances regarding the minor daughter that need to be addressed. This factor favors neither party.

Regarding factor (8), the standard of living of the parties established during the marriage, this Court has previously determined in its analysis of the equitable distribution factors that this factor favors Husband.

Regarding factor (9), the relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment, both parties hold four-year degrees from Shippensburg University. Both parties are currently employed. Wife is employed part-time and is seeking full-time employment. Wife testified that she believes she may require more education or training to find a job in event planning, hospitality, or customer service. Wife is looking for a secretarial/administrative position. The record reflects that Wife has succeeded in several different full-time positions during the course of the marriage. Wife testified that she will be unable to work in her current positions if she attends school because of financial reasons. Wife would like Husband to pay alimony for Wife to use to go back to school to get training in order to find full-time employment. Husband has great experience from a long career in law enforcement that he could draw from to find employment, but Husband's current position is not law enforcement related and Husband does not wish to obtain any future employment in law enforcement. Both parties testified regarding their extensive job searches. It is pure speculation that Wife requires further education to obtain full-time employment, and Wife could expand her job search beyond looking for secretarial and administrative positions. That being said, the advantage for this factor goes to Husband, and this factor favors Wife.

Regarding factor (10), the relative assets and liabilities of the parties, it is clear from the record that aside from Husband's pension, there are not a great amount of marital assets to be

split between the parties. Pursuant to this Court's determination of equitable distribution, each party receives an approximately equal amount of the net marital estate. Regarding Husband's pension, Wife receives a greater amount of this asset than Husband pursuant to this Court's determination of equitable distribution. Regarding liabilities, until Wife obtains full-time employment with benefits, Wife is responsible for paying for her own health insurance, which Wife testified is approximately $151 per month for adequate health insurance. Additionally, under this Court's determination of equitable distribution, each party has taken a share of the marital debt in equitable distribution, with Husband being responsible for $27,518.90 in marital debt and Wife being responsible for $40,744.10 in marital debt. Wife may also be responsible for obtaining life insurance on Husband's life to insure her interest in Husband's pension if Wife so chooses to do so, [sic] just as Husband could obtain life insurance on his own life for the benefit of his estate to insure his own interests. While Wife claims that there is a significant disparity between the parties in income, this is simply not the case as this Court has previously explained elsewhere in this opinion. This Court believes that its determination of equitable distribution, which provides Wife with a greater amount of Husband's pension, effectuates economic justice between the parties and provides Wife with some additional monies she could use to purchase life insurance on Husband's life, if she so wishes. This factor favors Wife slightly due to Wife's financial obligation of paying for her health insurance.

Regarding factor (11), the property brought to the marriage by either party, this factor favors neither party.

Regarding factor (12), the contribution of a spouse as homemaker, this Court in its determination of the equitable distribution factors found this factor to be neutral between the parties.

Regarding factor (13), the relative needs of the parties, this Court believes its determination of equitable distribution fairly addresses the needs of both parties.

Regarding factor (14), the marital misconduct of either of the parties during the marriage, this Court is aware of some

issues of marital strife between the parties during and near the end of the marriage but finds that the parties specifically did not go into these issues at the Master's Hearing and that they are not relevant here.

Regarding factor (15), the Federal, State and local tax ramifications of the alimony award, if this Court were to award alimony to Wife, Wife's alimony award would result in taxable income to her and the amount of the award would be deductible from Husband's gross income.

Regarding factor (16), whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs, this Court believes that its determination of equitable distribution provides Wife with sufficient property to provide for her reasonable needs.

Regarding factor (17), whether the party seeking alimony is incapable of self-support through appropriate employment, the record reflects that under this Court's determination of equitable distribution, Wife will receive half of the net marital estate not including Husband's pension, and 55% of Husband's pension. Wife also receives income from her two or three part-time positions. In total, this Court finds that Wife is capable of self-support through her current employment and will be in a better position once she finds full-time employment.

This Court's analysis of the alimony factors of 23 Pa.C.S. § 3701 results in one factor that favors Husband, one factor that favors Wife, and three factors that slightly favor Wife. Alimony is a secondary remedy, and alimony should only be awarded where economic justice is not afforded to the parties through equitable distribution alone. In the instant case, equitable distribution properly effectuates economic justice between the parties, and therefore Wife is not entitled to alimony.

Trial Court Opinion, 7/11/14, at 27–32.

The trial court's conclusions are amply supported by the evidence of record. In determining whether alimony was necessary in this case, the

court considered all of the factors set forth in 23 Pa.C.S. § 3701, including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker, and the duration of the marriage, and concluded an award was not required thereby. Accordingly, as the record supports the trial court's conclusions, the trial court did not commit an error of law or an abuse of discretion in denying Wife alimony.

The trial court balanced the equities in devising its award of equitable distribution. We conclude, giving the Master's recommendations that were adopted by the trial court the fullest consideration, particularly on the issues of credibility of witnesses, as she had the opportunity to observe and assess the behavior and demeanor of the parties, *Kraisinger v. Kraisinger*, 928 A.2d 333 (Pa. Super. 2007), and relying upon the trial court's findings supported in the record, that our standard of review compels affirmance of the equitable distribution award.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2015

-28-