**Bertha S. LAZAAR, Appellee,**

v.

**Kenneth I. LAZAAR, Appellant.**

Superior Court of Pennsylvania.

Argued April 17, 2002.

Filed July 11, 2002.

Reargument Denied Sept. 12, 2002.

Gerald A. Kinchy, Sayre, for appellant.

Rosannette R. Abrams, Athens, for appellee.

Before JOYCE, BECK and POPOVICH, JJ.

BECK, J.

¶ 1 We address whether in the context of equitable distribution the trial court properly approved a Qualified Domestic Relations Order (QDRO) which differed significantly from the trial court's order on which the QDRO was based. On appeal, appellant-husband asserts error because the trial court denied his motion to vacate the QDRO. We conclude that the trial court erred. We vacate the QDRO and remand for further proceedings.

¶ 2 This matter involves the protracted equitable distribution proceedings that followed the parties' divorce in 1996. Proceedings involving custody of the couple's two children have continued simultaneously through the courts, but the only matter at issue in this appeal is the distribution to wife of her share in husband's pension. Husband insists that the manner of distribution, via the QDRO, is contrary to the equitable distribution order in that it grants to wife an amount in excess of that set out in the order.

¶ 3 Husband and wife married in 1987 and have two sons. They divorced and entered into a Marital Settlement Agreement in 1996. However, in 1998, wife brought to the court's attention the existence of a pension husband held, but failed to disclose at the time of the settlement agreement. The court ruled that husband indeed withheld the pension and so imposed a constructive trust and reopened equitable distribution proceedings. At hearings in late 1999 and early 2000, the Master heard evidence regarding distribution of the pension and issued findings and a report. The court accepted the Master's findings and approved of the order, which included a direction that wife submit to the court a proposed QDRO.[1] Neither party filed exceptions to the report or order.

---

1. The Master also recommended that husband pay $3,500.00 in fees and costs associated with litigation on the pension matter. The court approved and ordered payment within sixty days. Husband has not challenged that portion of the order.

Wife filed a proposed QDRO and the court accepted it on April 5, 2000. Husband filed a motion to vacate the order. After hearing argument on the motion, the court denied husband relief. This appeal followed.

¶ 4 We review the propriety of an equitable distribution order under an abuse of discretion standard. *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10, 13 (1986). The order purporting to distribute the pension in this case provided as follows:

> Plaintiff [Wife] is herein found entitled to one-half the present value of Defendant's [Husband's] pension or a cash amount of $8,318.00 plus 5% interest yearly from 1999 to date of distribution. Counsel for [Wife] shall prepare a Qualified Domestic Relations Order for distribution as a lump sum, $8,318.00 plus 5% interest within forty-five (45) days of the date of this order. If the pension will not distribute a lump sum, counsel shall prepare and submit a Qualified Domestic Relations Order for distribution for the above amount when defendant retires, dies, quits, is discharged, or other circumstance triggering distribution.

Trial Court Order dated 2/11/00.

¶ 5 In response to this order, Wife proffered to the court a proposed QDRO, which the court accepted. The QDRO contained the following relevant provisions:

> The alternate payee [wife] is awarded fifty percent (50%) of the participant's

2. It appears from the parties' briefs that husband will turn 50 in 2003.

3. Although the certified record contains no transcript of the proceeding on the motion, it appears that husband presented no evidence

[husband's] accrued benefit as of May 5, 1995, the date of separation plus yearly interest.

> The plan will distribute benefits to [wife] in the form of a monthly annuity payable over [wife's] lifetime.

> [Wife] elects to begin receiving her share of the accrued benefit on the date [husband] becomes fifty (50) years of age.[2]

Trial Court Order dated 4/5/00.

¶ 6 On appeal, husband raises the same issues he argued at the proceeding on his motion to vacate.[3] In response to husband's claim that the court order intended wife be paid a lump sum, rather than a lifetime annuity, the court observes that the order provided for an alternate form of distribution in the event "the pension [would] not distribute a lump sum." Trial Court Order dated 2/11/00. Relying on established law that permits a nonparticipant spouse who receives deferred distribution to benefit from any pension increases not attributable to the efforts or contributions of the participating spouse, the trial court here held that the QDRO was proper. *See Berrington v. Berrington*, 534 Pa. 393, 633 A.2d 589, 594 (1993) (in a deferred distribution scheme, nonparticipating spouse may reap benefit of any pension increases not attributable to participating spouse, but only to the extent of his or her marital share).

¶ 7 The trial court concluded that husband's challenge to the QDRO was an attempt to "acquire some of the time value of [wife's] coverture share of the pension,"

and instead relied only on argument to support his claim that the QDRO did not conform to the intent of the Master and was contrary to the order of distribution entered by the court in February, 2000.

as well as an effort to "remove from the marital estate, and to keep to himself, all increases in value of the pension after the date of separation." Trial Court Opinion, 6/22/01, at 13–15. Based on *Berrington*, the trial court concluded that "[t]hose increases are marital property to the extent they are not attributable to [husband's] efforts" and so the provisions of the QDRO were valid and appropriate.

■ ¶ 8 We agree with the trial court's recitation of the law with respect to deferred distribution of pension funds. However we find that *Berrington* considerations were waived in this case.[4] We conclude that the QDRO approved by the court is inconsistent with its order directing wife to submit a QDRO. As a result, we conclude that a remand is proper.

¶ 9 The original order of distribution indeed focuses on a lump sum pay out. Although the order recognizes that this may not be possible, it nonetheless provides that in such case the proposed QDRO should provide for distribution of *the above [lump sum] amount* at the time of circumstances triggering distribution. From the record, it appears that both the Master and the court expected distribution in a lump sum. Indeed, the Master found that although "wife did not present any testimony regarding the ability of the plan to distribute current value of $8,318.00, . . . husband's plan has been previously charged in other matters before this court giving an early distribution." Master's Findings of Fact at ¶ 17. In addition, the Master recommended that if a lump sum pay out was impossible, wife should fashion a QDRO that distributes $8,318.00 over a monthly pay out *until paid out in full."*[5] *Id.* at ¶ 18, 633 A.2d 589. The court's order establishes that the court accepted this pay out scheme.

¶ 10 Thus, the court's order, which was based on the Master's recommendations, establishes an amount to be paid out whether in a lump sum or in deferred installments. In the latter case, interest would be added. Because the QDRO submitted by wife calls for a lifetime annuity, it is contrary to the courts' order, and does not accomplish what the distribution order intended.

¶ 11 Most importantly the QDRO was entered without an opportunity for husband to challenge its terms. The trial court found that husband's failure to file exceptions to either the Master's recommendations or the court's initial order left appellant without a remedy in this case, that is, he waived any and all challenges to the subsequently drafted QDRO. We do not agree. Until the terms of the QDRO were revealed to husband, he had no basis to complain about it. He raises no challenges to the court's initial order calling for a QDRO. Rather, he complains about

---

4. *Berrington* provides a valuation formula for a deferred distribution scheme. It appears from the record that in establishing the amount of her share, wife did not seek payment under a *Berrington* valuation. The Master too bypassed a *Berrington* analysis and substituted therefor a defined sum owed to the wife, whether paid out immediately or in deferred installments. The trial court thereafter accepted the Master's mode of valuation. Wife did not object to the defined sum, making a claim of entitlement under *Berrington* waived.

5. Paragraph 18 of the Master's Report and Recommendation provided as follows:

Plaintiff's counsel shall provide a Qualified Domestic Relations Order to the court to distribute $8,318.00 to Plaintiff in an appropriate form. If said pension is unable to distribute $8,318.00 before Defendant's retirement, death, discharge, or other circumstance relating to ability to access pension, *Plaintiff shall fashion a Qualified Domestic Relations Order that distributes $8,318.00 over a monthly payout to Plaintiff until paid out in full.*

wife's interpretation of that order and the form of the QDRO she submitted in response. He insists that in the event of a deferred payment, the court's order cannot be read to support a recalculation of the pay out amount to wife and a provision for a lifetime annuity for her. We agree. Based on all of the above, we vacate the QDRO.

¶ 12 Order reversed. Matter remanded for proceedings consistent with this opinion. Jurisdiction relinquished.