J-A34026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CARLA S. GROTHEY N/K/A CARLA S. MEYER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THOMAS E. GROTHEY | |
| Appellee | No. 619 MDA 2015 |

Appeal from the Order Entered March 19, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2001-FC-002436-15

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                                **FILED MARCH 11, 2016**

Carla S. Grothey n/k/a Carla S. Meyer ("Wife") appeals from the qualified domestic relations order (QDRO) entered on March 19, 2015, in the York County Court of Common Pleas, which was drafted by her ex-husband, Thomas E. Grothey ("Husband").  Wife complains the court erred in adopting Husband's QDRO because it was incorrectly drafted.  Based on the following, we are constrained to reverse and remand.

The facts and procedural history are as follows.  The parties both agree they were married on February 14, 1987, separated on September 1, 2001, and divorced on January 14, 2004.  Husband is a trooper for the

Pennsylvania State Police,[1] and participated in a deferred compensation plan as well as a defined retirement plan/pension as a member of the Commonwealth of Pennsylvania's State Employees' Retirement System ("SERS").

Prior to finalizing the divorce, a January 5, 2004, hearing was conducted to address the equitable distribution of the parties' marital property. Pertinent to this appeal, the parties agreed that Wife would be rewarded 65% of the marital portion with respect to Husband's deferred compensation plan and the defined pension plan.[2] Husband would also pay the expenses associated with the preparation of the QDROs for these two plans.

In November of 2013, Husband informed Wife that he intended to retire in February of 2014. His counsel prepared the QDROs but Wife did not sign the order. On February 12, 2014, Husband filed a petition for special relief/petition for enforcement of marriage settlement agreement, requesting

---

[1] At the time of separation, Husband had been employed as a state trooper for 8.62 years and his salary was $54,674.81. N.T., 2/18/2015, at 7.

Because it appears the trial court did not make a specific finding regarding the number of years of service, we do find some discrepancy in the record. In Wife's proposed QDRO, she alleges Husband worked for 8.6830 years. *See* Wife's Domestic Relations Order, 3/19/2015, at 2. In Husband's Brief, he claims 8.71 years of service. *See* Husband's Brief at 17.

[2] The plans were set forth in two separate QDROs.

the court direct Wife to sign both QDROs.  Subsequently, on April 16, 2014, with the consent of both parties, Husband then filed a *praecipe* to withdraw his petition for special relief without prejudice.

On August 19, 2014, Wife then filed a petition for special relief for enforcement of marriage settlement agreement and contempt.  Husband responded to Wife's petition on October 1, 2014.  A hearing was held on October 2, 2014.

After the hearing, on November 14, 2014, the court entered the following decision:

> At issue are two Qualified Domestic Relations Orders (QDROs). One relates to a defined compensation plan and the other to a defined benefits plan.  The parties entered into a settlement agreement January 5, 2004 as found in the transcript of proceedings of the same date.  At page 3 of the transcript is stated:  that "the parties agree that Wife shall be awarded 65%, $14,100.00, which we agree is the marital portion of the deferred compensation plan.  Counsel for Wife shall prepare a Qualified Domestic Relations Order which transfers the sum to Wife".  With regard to the state employee retirement of Husband the following is stated:  "the parties agree that Wife shall be awarded 65% of the martial portion of the plan.  The parties agree that the date of marriage is February 14 of 1987 and that the date of separation to be used for purposes of calculating the amount is September 1, 2001.  The parties agree that Husband shall pay the expenses associated with the preparation of the Qualified Domestic Relations Order."
>
> Former Wife presently argues the agreement should be interpreted utilizing 2005 amendments to the [D]ivorce [C]ode, [S]ection 3501(c)(Defined benefits retirement plans).  This section however, only applied to proceedings pending on or after the effective date.  We conclude this case was no longer pending since it had been resolved by agreement on January 5, 2004. Husband has argued new [Section] 3501(c) was the legislature's effort to supplement the Supreme Court's holding in Berrington

v. Berrington, 534 Pa. 393, 633 A.2d 589 (1993).  Therefore, since the amendment does not apply, Berrington controls and retirement benefits awarded to the non-participant spouse must be based only on the participant-spouse's salary at the date of separation.  We agree.  Husband however, goes on to argue for a Cornbleth[3] adjustment to calculate Wife's final figure.  Such adjustment is not included in the terms of the agreement as stated.  Therefore, since the agreement is silent on this adjustment, we do not believe Cornbleth automatically applies.  Indeed, we believe directing that Cornbleth be used effects an impermissible modification of the parties['] agreement.

We then come to the deferred compensation plan.  There is no question Wife was awarded 65% calculated to a particular figure of $14,100.00.  The parties agreed and agree that is what she was to receive.  She has not received such to date.  Wife's counsel was to prepare an Order to transfer the sum to Wife.  There is evidence that a QDRO was prepared and signed by the parties in early 2014.  Such apparently was provided to [Husband's prior counsel] on or about March 5, 2014.  It appears that th[e] QDRO was not submitted to the Court nor apparently to the plan administrator.  That document was not submitted in evidence in the instant proceedings.  While it is tempting to say that document, signed presently by the parties effects a modification of the original agreement, such is not in evidence and counsel have made no such argument.  Based on the clear statement of the agreement, being Wife's counsel was to prepare the document, and such was not done and further the agreement itself provided no interest or accumulated benefit for any delay, we decline to add interest or other increases of value to the specific amount of $14,100.00 agreed to.

Decision, 11/14/2014, at 1-3.  That same day, the court entered the following order:

[W]e do ORDER and DIRECT that the parties execute [a] QDRO regarding the defined benefit plan using the Berrington standard, participant's salary at date of separation being September 1,

_____

[3] **Cornbleth v. Cornbleth**, 580 A.2d 369 (Pa. Super. 1990), *appeal denied*, 585 A.2d 468 (Pa. 1991).

- 4 -

> 2001 as agreed, with no Cornbleth offset. The parties have 30 days to submit such to the Court for approval as may be necessary. With regard to the deferred compensation plan, the parties shall execute a QDRO transfer[r]ing former Wife's interest of $14,100.00 to her. The parties have 30 days to submit such [to] the Court for approval as may be necessary.

Order, 11/14/2014.

On November 20, 2014, the trial court signed a QDRO for the deferred compensation plan after execution by the parties. However, the parties continued to dispute the form of the defined benefits plan QDRO to be submitted. On February 10, 2015, Husband filed a petition for special relief seeking clarification of the order. In the petition, he indicated both parties submitted prospective QDROs to each other, and alleged the following:

> Wife believes that she is entitled to 75% of Husband's benefit as of the date of separation and Husband believes that Wife is entitled to 50% of Husband's benefit as of the date of separation. Husband bases his position on the fact that Wife is only entitled to her proportionate share based on Husband's normal retirement age, rather than the actual date of retirement.

Husband's Petition for Special Relief in the Nature of Clarification, 2/10/2015, at ¶ 12.

Wife responded, in pertinent part:

> It is admitted that Defendant/Former Husband's counsel submitted a Domestic Relations Order to Plaintiff's counsel for Plaintiff/Former Wife's signature on or about December 3, 2014. It is denied that the Court's Order could be interpreted in the manner that Defendant/Former Husband is proposing. To the contrary, the Court's decision and Order clearly state that the law at the time governs and that the [QDRO] would be prepared in accordance with the *Berrington* standard (Participant's salary at date of separation). The case law is clear on that issue. The pension enhancement based on Defendant/Former Husband's

- 5 -

years of service is marital and is not a contribution made by Former Husband after separation. *See Brown v. Brown*, 447 Pa. Super. 424, 669 A.2d 969 (1995), *affirmed*, *Brown v. Brown*, 547 Pa. 260, 690 A.2d 700 (1997), *citing*, *Berrington v. Berrington*, 534 Pa. 393, 633 A.2d 589 (1993).

Wife's Answer to Petition for Special Relief in the Nature of Clarification, 2/17/2015, at 2, ¶ 10.

A hearing was held on February 18, 2015, to address the matter. The court then invited both parties to submit their proposed QDROs. On March 19, 2015, the court entered an order, selecting Husband's QDRO as effecting the original agreement.[4] Wife filed this timely appeal.[5]

Wife raises the following issues for our review:

1. Whether the lower court committed an error of law and/or abuse of discretion in adopting the Domestic Relations Order on March 19, 2015 submitted by Former Husband/Participant in the SERS pension which provides for a specific dollar amount to the Alternate Payee/Former Wife?

2. Whether the lower court committed an error of law and/or abuse of discretion in failing to adopt the Domestic Relations Order proposed by the Former Wife/Alternate Payee herein which provides for Former Wife/Alternate Payee's share of the SERS pension to be calculated in

---

[4] The same day, the court entered an order, refusing Wife's proposed QDRO but erred in noting, "Alternative Payee's [Wife] Order accepted and signed". The court indicated this was a scrivener's error and it should have simply said "Alternative Order" accepted. **See** Trial Court Opinion, 5/6/2015, at 2.

[5] On April 10, 2015, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife filed a concise statement on April 21, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 6, 2015.

accordance with the *Berrington* standard utilizing the Participant's salary at the date of separation?

Wife's Brief at 11.

Based on the nature of Wife's claims, we can address them together. First, Wife argues the court failed by not utilizing the **Berrington** standard and coverture fraction[6] because it provided for a specific dollar amount to be paid to her of $616.12 per month. *Id.* at 15. Wife states:

> [**Berrington**] provides a historical standard of determining the marital portion of a pension utilizing a coverture fraction of time contributed to the plan during the marriage over the total time the participant is in the pension plan times the accrued pension payable based upon the participant's salary as of the date of separation and then times the percentage share awarded to the alternate payee (in this case 65% to Former Wife). **Berrington** also made clear that until the participant in the plan retires there is no method of calculating Wife's share. The Order proposed by the Former Husband provides for a specific dollar amount rather than the **Berrington** coverture fraction formula and therefore, clearly violates the Decision and Order of Court entered November 14, 2014 in this matter.

*Id.* at 15-16 (citations omitted). Second, Wife alleges her QDRO is correct under **Berrington** because "the coverture fraction is multiplied by the

---

[6] The coverture fraction is

> that portion of the value of the pension that is attributable to the marriage. The numerator of the fraction is the total period of the time the employee spouse was a participant in the plan from the date of marriage until the date of separation, and the denominator is the total period of participation in the plan.

**Meyer v. Meyer**, 749 A.2d 917, 919 n.1 (Pa. 2000), *quoting* **Berrington**, 633 A.2d at 591 n.5.

member's retirement benefit on the effective date of the member's retirement but calculated using the member's final average salary as of September 1, 2001 and that 65% of the martial property component is allocated to the Alternate Payee[, Wife]." *Id.* at 17. Relying on ***Brown***, ***supra***, Wife contends the "***Berrington*** standard of the coverture fraction times the final benefit presuming the Participant's salary as of the date of separation is applied in the same fashion with a state policeman's pension." ***Id.*** Moreover, she states the "coverture fraction utilizes the enumerator [sic] as years earned from February 14, 1987 to the date of separation of September 1, 2001 with the denominator being the total amount of the member's service as defined by [the] SERS on the effective date of member's retirement." ***Id.***

"We review the propriety of an equitable distribution order under an abuse of discretion standard." ***Lazaar v. Lazaar***, 804 A.2d 1234, 1236 (Pa. Super. 2002).

> We have stated that an abuse of discretion is not found lightly, but upon a showing of clear and convincing evidence. Under the abuse of discretion standard, the appellate court does not usurp the trial court's duty as factfinder. An abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law.

***Paulone v. Paulone***, 649 A.2d 691, 692 (Pa. Super. 1994) (citations omitted).

Moreover,

In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake…. It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. Further, where […] the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself.

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004) (internal citations omitted).

Pennsylvania's Divorce Code provides that marital property includes "property acquired by either party during the marriage." 23 Pa.C.S. § 3501(a). "Generally, increases in retirement benefits occurring after separation are not considered marital property." *Meyer*, 749 A.2d at 919; *see also* 23 Pa.C.S. § 3501(a). Therefore, the Code excludes "[p]roperty acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets." 23 Pa.C.S. § 3501(a)(4).

In *Berrington*, the "issue presented [wa]s whether the non-employee spouse's share in a deferred distribution of a pension should be based upon the salary which the employee-spouse earned at the date of separation or upon the amount earned at some post-separation retirement date." *Berrington*, 633 A.2d at 590. The trial court "determined that the marital share should be based on the employee's pension to be received at the time

the pension plan enters pay status." *Id.*[7] A panel of this Court reversed, "holding that the amount to be awarded the non-employee spouse should be based on the employee's salary at the date of separation, but augmented by growth in the pension fund based on factors other than the employer's or employee's contributions to the fund after the date of separation." *Id.* (citation omitted).

On review, the Pennsylvania Supreme Court determined the trial court's method of calculation was incorrect because "although the pension benefit would be reduced by the coverture fraction, the reduction would be applied to a pension that was partially produced by increased post-separation contributions." *Id.* at 592. As such, in affirming this Court's decision, the Supreme Court held:

> [I]n a deferred distribution of a defined benefit pension, the spouse not participating may not be awarded any portion of the participant-spouse's retirement benefits which are based on post-separation salary increases, incentive awards or years of service. Any retirement benefits awarded to the non-participant spouse must be based only on the participant-spouse's salary at the date of separation. However, should there be increases in retirement benefits payable to the employee spouse between the date of marital separation and the date the non-participant spouse begins receiving benefits which are not attributable to the efforts or contributions of the participant-spouse, any such

---

[7] The trial court relied on *LaBuda*, *supra*, which "determined that the marital share of husband's pension was calculated by creating a fraction representing the number of years husband was in the pension plan as of the date of marital separation divided by the total number of years in the plan ('the coverature [sic] fraction")[.]" *Berrington*, 633 A.2d at 591.

increased benefits may be shared by the non-participant spouse based upon his or her proportionate share of the marital estate.

***Id.*** at 594.[8, 9]

Subsequently, in ***Brown***, ***supra***, the Pennsylvania Supreme Court revisited the pension formula matter. In ***Brown***, the divorcing husband was a Pennsylvania state police officer.

On the date of separation the husband was guaranteed the right to retire at 50% of his highest salary after twenty years of service and 75% of his highest salary after twenty-five years of service. On the date of separation, July 6, 1989, the husband had 16.3 years of service and earned $ 37,383.00 per year. At

---

[8] The ***Berrington*** Court indicated it could not complete the math in that case because it did not know what husband's retirement benefit would be, even if it was based on his salary at the time of separation, "since the plan's formula may change or there may be other non-employee factors affecting its value." ***Id.*** at 593.

[9] It merits mention that in 2004, ***Berrington*** was superseded by an amendment to the Domestic Relations Code, 23 Pa.C.S. § 3501(c), in which the Legislature sought "to reverse ***Berrington v Berrington***, 534 Pa. 393, 633 A.2d 589 (1993), to adopt a coverture fraction methodology along the lines of ***Holland v. Holland***, 403 Pa. Super. 116, [588] A.2d 58 (1991), and to include all postseparation enhancements except for postseparation monetary contributions by the employee spouse in the value of the pension." 23 Pa.C.S. § 3501(c), cmt. Section 3501(c) was enacted on November 29, 2004 and became effective 60 days later. ***See also Smith v. Smith***, 938 A.2d 246 (Pa. 2007).

"Although [Section 3501(c)] originally was applicable only to equitable distribution proceedings commenced on or after the effective date of January 28, 2005, the legislature later declared that 'the provisions of 23 Pa. C.S. § 3501(c) shall apply to all equitable distribution proceedings pending on or after the effective date of this section.' Act of June 15, 2005, P.L. 7, No. 4, effective immediately." ***Id.*** at 258 n. 16. Here, the parties' divorce was finalized on January 5, 2004. Accordingly, the amendment does not apply to the present matter.

the time of this appeal, husband was still employed with the Pennsylvania state police and had over twenty-two years of service.

**Brown v. Brown**, 690 A.2d 700, 700-701 (Pa. 1997) (footnote omitted).

The trial court "held that wife was not entitled to share in increases in husband's pension due to a change in the pension benefit formula after twenty-five years of service because 'years of service' was excluded from marital property by this court in **Berrington**[.]" **Brown**, 690 A.2d at 701. A panel of this Court "vacated the trial court's order, holding that wife was entitled to share in husband's pension as calculated at the applicable rate of 50% or 75% depending on his years of service." **Id.**

The Supreme Court affirmed this Court's decision, explaining:

> [W]e agree with the wife's position that she is entitled to share in the increased twenty-five year benefits as is set out in her formula.
>
> First, if husband remains employed twenty-five years, the salary increases he has received between separation and retirement will not be reached by wife, for her retirement share is calculated on his salary at separation. Second, whether husband remains employed twenty years or twenty-five years, the effort expended by him in remaining employed is protected from encroachment by the wife by the coverture fraction: as the number of years worked increases the coverture fraction increases from 16/20 to 16/25, thus making the marital share available to the wife smaller as time increases and protecting his increased effort from encroachment. And once this increased effort is protected, that is all that is required by **Berrington**. The fact that husband's pension is calculated at twenty years at 50% of his salary and at twenty-five years at 75% of his salary is unrelated to his post-separation 'efforts or contributions,' and thus, may be shared by the wife.

**Id.** at 702.

- 12 -

Turning to the present matter, the order purporting to distribute the pension in this case, as drafted by Husband and adopted by the court, provided, in pertinent part, as follows:

> The portion of the retirement benefits to be assigned to the Alternate Payee are defined as follows: Alternate Payee's share of Member's retirement benefit shall be Six Hundred Sixteen and 12/100 ($616.12) Dollars per month. Alternate Payee shall also be entitled to her proportionate share of any cost of living adjustments granted to retirees.

Domestic Relations Order, 3/19/2015, at ¶ 11.

In response, Wife's proposed QDRO contains the following relevant provisions:

> 6. (a) The martial property component of Member's retirement benefit equals (1) the coverture fraction multiplied by (2) the Member's retirement benefit on the effective date of Member's retirement, but calculated using the Member's final average salary as of September 1, 2001.
>
> (b) The coverture fraction is a fraction with a value less than or equal to one. The numerator is 8.6830 years of service earned from February 14, 1987 (the date of marriage) to September 1, 2001 (the date of separation). The denominator is the total amount of Member's service, as defined by SERS, on the effective date of Member's retirement.
>
> (c) 65.00% of the marital property component of Member's retirement benefit is to be allocated to the Alternate Payee as her equitable distribution portion of this marital asset.

Wife's Domestic Relations Order, 3/19/2015, at 2.

In its Rule 1925(a) opinion, the trial court concisely explained its rationale for adopting Husband's QDRO:

> We have again looked at the QDRO's submitted. We believe we have signed the correct one, but if we have not, that

- 13 -

> can be corrected by using Wife's submission. More importantly, we believe we were correct in our interpretation of the underlying agreement reached back in 2004. Frankly, we cannot comprehend given our decision why there are two different QDRO's submitted.

Trial Court Opinion, 5/6/2015, at 3. We disagree.

In Husband's brief, he explains how his expert witness, Daniel E. McGarry, Jr., a financial consultant, arrived at the amount of $616.12. Husband states that his benefit accrual rate of 2.5% was multiplied by years of credited service (8.71 years), which was then multiplied by his final average salary at the date of separation ($54,675.00). Husband's Brief at 17. Husband avers that number is an annual retirement benefit ($11,905.48), which is then divided by 12 months, resulting in the monthly retirement allowance ($992.12). *Id.* at 17-18. Husband claims the number of years of marriage (8.29 years) is divided by the number of years he was a participant in the plan from the date of marriage to the date of separation (8.68), which produces the coverture fraction (.96). *Id.* at 18. The monthly allowance is then multiplied by the coverture fraction, resulting in an amount of $952.44. *Id.* Husband then claims that number should actually be $947.88 because of "the rounding of certain figures." *Id.* Husband states

- 14 -

that number is then multiplied by Wife's share of marital assets (65%), which produces the amount of $616.12. *Id.*[10]

We find Husband's formula fails to properly apply *Berrington* and *Brown* for several reasons. First, Husband's calculation fails to incorporate that Wife is entitled to share in the increased 20 or 25-year pension benefit that Husband will receive at the time of retirement as it "appears to be unrelated 'to the efforts or contributions of the participant-spouse[.]" *Brown*, 690 A.2d at 702.[11] Therefore, pursuant to *Brown*, Husband's salary at the date of separation should have first been multiplied by the

_____

[10] At the October 2, 2014, hearing, McGarry explained his calculation as follows:

> Based on the methodology that was used in effect at the point in time based on the case laws that were already mentioned in the hearing so far, the way it's calculated would have been to take the years of marriage and employed and divide them by the years employed to determine the coverture fraction in that situation. And then by using interest rates and a present value methodology, you would determine what the present value was at that point in time.
>
> The coverture fraction can also be applied to the benefit that he had accrued at that point in time as of – I think I did it as of 12/31/2001, which I believe I had a statement which showed what that value was around that time as to what his earnings had been.

N.T., 10/2/2014, at 76.

[11] Unlike his argument before the trial court, it appears Husband's calculation provides for a 25% benefit instead of a 75% benefit rate. Husband's Brief at 17.

guaranteed benefit, which appears to be 50 or 75%, based on the employment years. *Id.* at 701. Second, Husband's coverture fraction does not represent his years of service at the time of separation divided by the total number of years of service. Rather, his denominator is limited to the number of years he was employed while married to Wife. *Berrington*, 633 A.2d at 591 n.5. Third, contrary to *Brown*, Husband does not multiply the coverture fraction to the resulting number from the salary and guaranteed benefit amount. *Brown*, 690 A.2d at 701. Instead, Husband multiplies the benefit rate by the number of years of credited service at the time of separation by the salary at the time of separation, and then subsequently applies the coverture fraction.

Accordingly, we conclude the court erred in adopting Husband's QDRO with respect to the defined pension plan as it does not adhere to the dictates of *Berrington* and *Brown*. Therefore, we vacate the order entering Husband's QDRO and remand the matter for further proceedings, including the entry of a proper QDRO.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2016

- 16 -